# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| F.F., a minor, by and through her next friend and father, JAMES ELLARD FISHER, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:25-cv-9112 |
| v. | ) ) | Judge: |
| VALLEY VIEW COMMUNITY UNIT SCHOOL DISTRICT 365U, DR. KEITH WOOD, in his official capacity as Superintendent of Schools for the Valley View Community Unit School District 365U, and DR. JASON PASCAVAGE, in his official capacity as Principal of Bolingbrook High School, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

### INTRODUCTION

1. Late last fall, F.F., an active, cheerful, self-assured 17-year-old female Junior at Bolingbrook High School, in Bolingbrook, Illinois, juggling a busy schedule of academic and extracurricular activities, stepped into a girls' multi-use restroom at school during a break in classes. The restroom was labeled, "girls' bathroom." After using a toilet in that restroom, as F.F. walked out from the toilet stall, she was startled to encounter an obvious male student in the restroom, standing

squarely in front of the stall door. This student, dressed in typical male clothing, and exhibiting no outward appearance or other indication of presenting as female, proceeded to move through the facility with the confidence of someone asserting an established right.

2.      Glancing back at the toilet stall that she had just been in, F.F. felt a surge of dread as her eyes focused on the wide gaps on either side of the stall's door where it was loosely joined to the stall's walls. F.F. grew even more alarmed as she looked down at the large space between the bottom of that door and the bathroom floor. The horrifying thought struck her that a male student standing outside the closed stall door would have seen her undergarments placed on the floor and could have glimpsed her naked body through the gaps on the side. Panicked, F.F. fled the restroom.

3.      Bewildered, hurt, and humiliated, F.F. spent the next day and a half in a daze. She finally mustered the courage to confide in her father, James Ellard Fisher (Fisher), who immediately took up the matter with school authorities. A meandering dialogue ensued over the next few months between Fisher, on behalf of and occasionally accompanied by F.F., and officials at Bolingbrook High School (sometimes, the School) and at Valley View Community Unit School District 365U (the School District), which operates the School.

4.     Officials at the School and the School District were recalcitrant in volunteering information, and to date, have not delivered or shown an applicable written policy. Nonetheless, persistence on the part of Fisher has revealed a presumably orally formulated policy by the School District to strictly abide by so-called non-regulatory guidance from the State of Illinois on the issue. Rigorously adhering to the letter of that guidance, the School District directs the School to allow biological male students access to female-only spaces, including restrooms, locker rooms, changing rooms, and showers, without any objective assessment of gender dysphoria or even subjective manifestation of female identity, but based merely on a privately expressed preference.

5.     In the spring of this year, Fisher, on behalf of F.F., lodged a formal complaint with the School District against this policy, pointing to F.F.'s traumatic experience in the girls' restroom last fall. After more than three months, supposedly spent "investigating," the School District dismissed the complaint, trivializing F.F.'s distress by characterizing her apprehension that a male student had seen her naked body as "purely speculative." The School District's response disregards the core issue: the presence of a biological male in a multi-use girls' restroom based solely on the male's self-declared non-conforming gender preference.

6.     The most reasonable and least intrusive accommodation of the handful of biological male students with such non-conforming gender preferences would be

to make available to them single-use gender-neutral spaces. This would be especially apt for those male students whose non-conforming gender preferences remain limited to the use of spaces such as restrooms, locker rooms, changing rooms, and showers, as seems to be the case with the male student F.F. encountered in the girls' restroom.

7. Eschewing this sensible remedy, the School and the School District have instead chosen one that abandons the inviolability of female-only spaces. They have insisted on accommodating male students with non-conforming gender preferences in multi-use sex-segregated spaces previously reserved for females. This amounts to discrimination against the female students because it denies them the use of secure sex-segregated spaces free from intrusion by males.

8. This discrimination is sex-based. The spaces that have been selected to accommodate biological male students with non-conforming gender preferences are the ones previously reserved for the exclusive use of female students. The sole criterion in selecting these spaces is that they were originally designated for the opposite sex. To put it another way, the sex of a space's original designees alone determines whether that space has now been, or will be, repurposed for accommodating male students with non-conforming gender preferences.

9.     This discriminatory treatment based on sex is also grounded in gender identity. The previously female-only spaces are being repurposed on account of the self-declared gender preferences of certain male students.

10.     Indeed, the School District's policy confers on males with non-conforming gender preferences the optionality of choosing sex-segregated spaces aligned with either their biological sex or their self-identified gender. This option is denied those female students whose gender identity conforms to their biological sex. Such female students are nonetheless compelled to share with biological males what should be secure sex-segregated spaces, and thus, are robbed of their comfort and dignity.

11.     Despite receiving over $30 million in federal funding last year, the School District hides behind non-regulatory guidance from the State of Illinois to deny over 1,600 female students at Bolingbrook High School restrooms, locker rooms, changing rooms, and showers that are secure from intrusion by biological males.

12.     In allowing biological males access to female-designated facilities based solely on self-declared gender preferences, absent any requirement for medical documentation or consistent gender expression, and in failing to offer single-use gender-neutral restrooms to these males as a reasonable alternative, the School District is treating female students differently based on their sex, without any

5

compelling governmental interest or narrowly tailored means to justify such discrimination, thus violating the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

13. Furthermore, the District's policy violates Title IX of the Education Amendments of 1972, Pub. L. No. 92-318, 86 Stat. 235 (June 23, 1972) (codified as amended at 20 U.S.C. §§ 1681–1688) (hereinafter, Title IX), which prohibits sex-based discrimination in federally funded educational programs. By prioritizing the self-declared non-conforming gender preferences of a tiny minority of male students over the privacy and safety rights of female students, the School District fosters a hostile educational environment that impedes equal access to educational facilities.

14. This class-action complaint, brought on behalf of F.F. and all other similarly situated female students at Bolingbrook High School, by and through F.F.'s father, Fisher, for declaratory and injunctive relief and nominal damages, seeks to compel the School District to adopt a policy that ensures safe facilities for the exclusive use of its female students while providing single-use gender-neutral options for males with non-conforming gender preferences.

15. Without such relief, F.F. and other similarly situated female students at Bolingbrook High School will continue to experience loss of privacy and a diminished sense of safety, accompanied by anxiety, embarrassment, and distress. As a result, they will persist in modifying their behavior, avoiding school restrooms,

locker rooms, changing rooms, and showers, or seeking inconvenient alternatives, such as requesting access to single-use staff facilities, taking valuable time away from classroom instruction, coaching, or practice.

**PARTIES**

16. Plaintiff F.F. is a 17-year-old female student enrolled at Bolingbrook High School. She brings this action by and through her next friend and father, Fisher, pursuant to Federal Rule of Civil Procedure 17(c).

17. Plaintiff Fisher, as next friend, represents F.F.'s interests and seeks to protect her right to a safe and equitable educational environment.

18. The proposed class consists of all female students at Bolingbrook High School who have been or will be subjected to the School District's policy allowing biological male students to use the School's female-only spaces, including restrooms, locker rooms, changing rooms, and showers, thereby compromising the female students' privacy and safety.

19. The Defendant School District is a political subdivision of the State of Illinois, responsible for operating and supervising public schools, including Bolingbrook High School, pursuant to various laws of the State of Illinois, including but not limited to the Illinois School Code, 105 ILCS 5/10-1 *et seq*. The School District is empowered to establish policies for the effective operation of its schools, including the policy challenged herein. The School District's principal offices are

7

located in Romeoville, Will County, Illinois. The School District is a recipient of substantial federal financial assistance. For fiscal year 2023, about 8.7 percent of the School District's total revenue of approximately $350 million, amounting to some $30.45 million, consisted of federal funding.[1] As such, the School District is subject to Title IX. It is a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

20. Defendant Dr. Keith Wood (Dr. Wood) is the Superintendent of Schools for the School District, with authority and responsibility for the administration and management of schools, including Bolingbrook High School, pursuant to 105 ILCS 5/10-21.4. Superintendent Wood enforces the School District's policies, including the restroom policy at issue. He is sued in his official capacity and is a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

21. Defendant Dr. Jason Pascavage (Dr. Pascavage) is the Principal of Bolingbrook High School, with delegated authority and responsibility for its administration pursuant to 105 ILCS 5/10-21.4a. Dr. Pascavage enforces the School District's policies, including the restroom policy, under the supervision of Dr. Wood.

---

[1] Ill. State Bd. of Educ., Valley View CUSD 365U District Finances: Revenue Percentages, ILL. REP. CARD, https://www.illinoisreportcard.com/District.aspx?source=environment&source2=revenuepercent ages&Districtid=56099365U26 (last visited July 31, 2025).

He is sued in his official capacity and is a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

22. Defendants are responsible for the policy that permits biological male students to use the School's female-only spaces, instead of offering these male students the less intrusive alternative of single-use gender-neutral spaces, causing harm to F.F. and similarly situated students. Each Defendant, and those under their supervision, direction, or control, has intentionally performed, participated in, or abetted the acts alleged herein and will continue to cause irreparable harm unless enjoined.

## JURISDICTION AND VENUE

23. This action arises under 42 U.S.C. § 1983 to redress deprivations of rights secured by the Equal Protection Clause of the Fourteenth Amendment and under Title IX.

24. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction).

25. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this judicial district, and a substantial part of the events giving rise to Plaintiffs' claims occurred within this district.

26. This Court has authority to issue declaratory and injunctive relief pursuant to Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. §§ 2201 and 2202, and pursuant to its inherent equitable powers.

27. This Court has personal jurisdiction over Defendants because they are domiciled in Illinois.

**CLASS ALLEGATIONS**

28. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of all female students at Bolingbrook High School who have been or will be subjected to the School District's policy of allowing biological male students to use the School's female-only spaces, instead of offering these male students the less intrusive alternative of single-use gender-neutral spaces.

29. *Numerosity*: The proposed class is sufficiently numerous that joinder of all members is impracticable. Bolingbrook High School had 3,317 students enrolled as of October 1, 2023,[2] with approximately half (estimated at 1,658) being female students. Upon information and belief, all such female students use or rely on the

---

[2] Bolingbrook High School (9–12) Enrollment Data, ILL. REP. CARD, https://www.illinoisreportcard.com/school.aspx?source=studentcharacteristics&source2=enrollment&Schoolid=56099365U260007 (last visited July 31, 2025).

School's female-only spaces and are affected by the policy, satisfying the numerosity requirement under Rule 23(a)(1).

30. *Commonality*: There are questions of law and fact common to the class, including: (a) whether Defendants' policy of allowing biological male students to use the School's female-only spaces, instead of offering these male students the less intrusive alternative of single-use gender-neutral spaces, violates the Equal Protection Clause; (b) whether the policy constitutes sex-based discrimination under Title IX; and (c) whether the policy creates a hostile educational environment for female students. These common questions satisfy Rule 23(a)(2).

31. *Typicality*: F.F.'s claims are typical of the class. Like other female students, F.F. was subjected to the School District's policy, resulting in a violation of her privacy, disruption of her education, and infliction of emotional distress. Her claims arise from the same policy and legal theories as those of the class, satisfying Rule 23(a)(3).

32. *Adequacy of Representation*: F.F., through her father Fisher, will fairly and adequately represent the interests of the class. They have no interests antagonistic to those of the class, and their counsel is experienced in civil rights litigation and class actions, satisfying Rule 23(a)(4).

33. *Rule 23(b)(2)*: Defendants have acted on grounds generally applicable to the class by implementing a uniform policy that applies to all students at

11

Bolingbrook High School. Injunctive and declaratory relief is appropriate for the class as a whole to prevent further harm from the policy's enforcement.

**FACTUAL ALLEGATIONS**

34. On November 4, 2024, at around 10:00 a.m., while attending classes at Bolingbrook High School, during a passing period, F.F. entered a girls' multi-use restroom labeled "girls' bathroom," expecting the privacy customarily afforded girls in female restrooms. After using and exiting a stall, she was startled to see an individual, evidently another student, and obviously male, dressed in male-typical clothing and with no visible indication of female identity, standing in close proximity to and squarely in front of that stall. On being seen by F.F., the male student moved through the restroom with the familiarity and confidence of someone accustomed to using it regularly.

35. The stall's design, with wide spaces on either side of the loosely hung door and a large gap beneath, caused F.F. to fear that the male student could have seen her undergarments or her exposed body while she was disrobed. This possibility triggered in F.F. intense feelings of anxiety, discomfort, and shame. Distraught, F.F. hastily left the restroom.

36. On November 6, 2024, F.F., still severely troubled, divulged the details of the incident to her father, Fisher.

37.  The following day, November 7, 2024, Fisher sent a text message to the School's principal, Dr. Pascavage, to report the incident and raise concerns about F.F.'s privacy. Dr. Pascavage responded that the male student had been granted access to the girls' restroom, pursuant to an Individual Development Plan (IDP), noting that IDPs, typically used for academic or behavioral issues, had been extended to include gender-identity accommodations.

38.  On November 8, 2024, in a text message to Fisher, Dr. Pascavage offered F.F. access to single-use staff restrooms.

39.  During an in-person meeting with Fisher on November 12, 2024, Dr. Pascavage acknowledged the absence of a written restroom policy, stating that the School followed Illinois state guidelines. He handed Fisher a single-page document captioned "III-B-1: Gender-based Restrooms, Locker Rooms, and Changing Rooms."

40.  The hyperlink displayed at the top of that document suggests that it was a printout from one section of the Illinois Department of Human Rights (IDHR) website,[3] titled "Guidance on Protection of Students in Illinois: A Non-Regulatory Guidance Relating to Protection of Transgender, Nonbinary, and Gender

---

[3] Illinois Department of Human Rights, https://dhr.illinois.gov (last visited July 31, 2025).

Nonconforming Students." [4] That section of the IDHR website displays, in a web-friendly format, text from a similarly titled 2021 IDHR publication.[5]

41.     The 2021 IDHR publication purports to provide "non-regulatory guidance" on complying with the Illinois Human Rights Act, 775 ILCS 5/5-101 *et seq.*, "in the context of a school setting, with specific focus on how the Act protects the rights of transgender, nonbinary, and gender nonconforming individuals."[6]

42.     The one-page document that Dr. Pascavage handed Fisher printed out the section of the IDHR website that displayed the following text from the 2021 IDHR publication:

> Use of restrooms, locker rooms and changing rooms may not be restricted based upon a student's physical anatomy or chromosomal sex. A student must be permitted to access restrooms or bathrooms, locker rooms and changing rooms that align with their gender-related identity and ***without having to provide documentation or other proof of gender***.
>
> Under the Act, ***the discomfort or privacy concerns of other students***, teachers, or parents ***are not valid reasons*** to deny or limit the full and equal use of facilities based on a student's gender-related identity. Instead, any student, teacher or other individual ***seeking more privacy should be accommodated by providing that individual a more private option upon their request, if possible***. "The prejudices of others are part of what the [Act] was meant to prevent." "[T]here is no right that insulates a student from coming in contact with others who are different

---

[4] Ill. Dep't of Hum. Rts., Guidance Relating to Protection of Transgender, Nonbinary, and Gender Nonconforming Students, https://dhr.illinois.gov/publications/guidance-re-illinois-students-1221.html# (last accessed July 31, 2025).
[5] Ill. Dep't of Hum. Rts., Guidance Relating to Protection of Transgender, Nonbinary, and Gender Nonconforming Students Under the Illinois Human Rights Act (Dec. 2021).
[6] *Id.* at 1.

than them or a Bathroom Privacy Act, unless the behavior violates a school policy or is criminal."[7]

43. On November 12, 2024, Dr. Pascavage met with F.F. in his office, informing her of the option to use staff restrooms. F.F. expressed frustration, preferring that the male student be directed to use alternative facilities rather than her having to modify her routine.

44. Fisher continued communicating with Dr. Pascavage and the School District's Superintendent of Schools, Dr. Wood, via email throughout November, but no remedial actions followed.

45. On December 9, 2024, at a public meeting of the School District's Board of Education, Fisher raised the issue of male students' obtaining access to the girls' restrooms, drawing attention to the gaps flanking and below the toilet stall doors, rendering the interior of the stall partially visible from outside.

46. Between December 20, 2024, and January 6, 2025, during the School's holiday break, the School District installed rubber strips and other opaque material on the toilet stalls in the girls' restrooms in an attempt to cover gaps, in response to Fisher's concerns about the stall design. No such modifications were made to any of the toilet stalls in the girls' locker rooms, however.

---

[7] *Id.* at 6 (quotation marks and alterations in original) (footnotes omitted) (emphasis added).

47. In January 2025, F.F. attempted to use the staff restroom in the School's library to avoid running into a male student in a girls' restroom. She was, however, denied access to the staff restroom by the librarian.

48. Confused and discouraged, F.F. gave up attempting to use the staff restroom and avoided student restrooms in that part of the School's campus where she had encountered the male student in the preceding fall.

49. Instead, F.F. took deliberate care to use other girls' restrooms in the School, as far away as possible from that one girls' restroom in which she was startled and distressed to come across a male student. Further, F.F. used these girls' restrooms only during class hours. While this meant losing classroom instruction time, it minimized the risk of another unpleasant encounter. The planning that went into every visit to a restroom disrupted F.F.'s routine, heightened her unease, and diminished her sense of safety at the School. Often, she delayed or skipped restroom visits. This was especially unsettling during the days she had her period.

50. On February 10, 2025, Fisher spoke with Dr. Wood by phone, learning that male students could access the School's female-only spaces, including restrooms, locker rooms, changing rooms, and showers, with pre-approval through IDPs.

51. On March 20, 2025, Fisher was given a tour of some of the girls' restrooms at the School. He concluded that a female using a toilet stall in such a

restroom was still vulnerable to the prying eyes of a male allowed access to the facility. Fisher observed that while rubber strips or other opaque material had been placed on the sides of most toilet stall doors, this material did not always fully cover the gaps between a stall door and its walls. The area below the stall door remained exposed. Because the toilet stall doors do not extend all the way to the restroom ceilings, an individual standing close enough to a stall door could peer inside the stall. Additionally, many of the girls' restrooms, particularly on the east side of the campus, had been rendered unavailable due to unrelated incidents. With fewer girls' restrooms open for use, the risk of F.F., or any other female student, encountering a male student in a girls' restroom had gone up.

52.    The same day, March 20, 2025, Fisher filed a formal Title IX complaint (#25-08) with the School District's Title IX Coordinator, Sarah DeDonato, Assistant Superintendent of Human Resources. The complaint recounted the details of F.F.'s encounter with a male student in a girls' restroom on November 4, 2024, arguing that as a result, F.F. was discriminated against and harassed based on her sex. In the complaint, Fisher stated that he had reason to believe that the male student could have seen F.F.'s undergarments or genitals, pointing out that the restroom was not designed for shared use by biological males and females.

53.    On April 6, 2025, Dr. Carter Larry, Director of Safety and Security for the School District, informed Fisher, via email, that he would be investigating

Fisher's complaint, attaching a "Notice to Parties of Title IX Complaint." Dr. Larry asked Fisher to submit to him any evidence or witness information via email by April 10, 2025.

54. As part of the School District's investigation, Dr. Larry scheduled an interview with Fisher and F.F. for April 11, 2025. By this time, Fisher and F.F. felt exasperated and thwarted by conflicting responses from Dr. Pascavage and Dr. Wood about F.F.'s access to staff restrooms as well as their inability to produce a written policy formulated by the School District governing access to female-only spaces by male students. Accordingly, Fisher declined to be interviewed and refused to allow F.F. to be interviewed to spare her further emotional strain.

55. On June 23, 2025, Dr. Teresa Polson, the School District's Assistant Superintendent for Educational Services, sent Fisher a final decision letter via certified mail and email, rejecting his Title IX complaint.

56. This final decision letter fell back on, extensively cited, and reproduced verbatim large chunks of IDHR's non-regulatory guidance, quoted above in paragraph 42, to justify the School District's allowing male students unrestricted access to female-only spaces based solely on self-declared gender preferences.

57. Worse, the final decision letter belittled F.F.'s legitimate privacy concerns, branding her apprehension, articulated by Fisher, that the male student in

question may have illicitly viewed her underclothes and genitals as "purely speculative and not based on fact."

58. The summary dismissal of Fisher's Title IX complaint disregarded the School District's obligation under Title IX to maintain a non-hostile environment for all students, including F.F., whose privacy concerns were deemed insufficient to warrant investigation or remedy.

59. With the next school year fast approaching, F.F. continues to experience anxiety and discomfort at the specter of having to navigate restroom access, feeling her privacy and safety remain compromised. She reports that other female students share concerns about male students' accessing the School's female-only spaces, believing such access violates their privacy rights.

60. All the information supplied to Fisher by Dr. Pascavage and Dr. Wood inexorably leads to the conclusion that the male student F.F. encountered in a girls' restroom last fall will retain full access to the School's female-only spaces in the upcoming school year, and that no further remedial steps are planned or will be undertaken.

61. This conclusion is reinforced by the statement in the School District's final decision letter dismissing Fisher's Title IX complaint, "The investigation into this Title IX complaint has been concluded, and this matter is considered closed."

62.     F.F. and all other similarly situated female students at Bolingbrook High School will have to bear the burden of accommodating the gender preferences of male students, disrupting their sense of normalcy and safety while attending school.

**CLAIMS FOR RELIEF**
**COUNT I**

**Denial of Equal Protection**
**U.S. Const. Amend. XIV**
**(Against All Defendants)**

63.     Plaintiffs incorporate paragraphs 1 through 62 as though fully set forth herein.

64.     Defendants' policy of allowing male students access to the School's female-only spaces based solely on these male students' self-declared non-conforming gender preferences treats such students differently than female students, who are consequently subjected to privacy violations in restrooms designated for their sex.

65.     This policy discriminates on the basis of sex and on grounds of gender identity by allowing male students to choose between male and female sex-segregated spaces according to, alternatively, their biological sex or self-identified gender. In sharp contrast, female students, like F.F., are denied the choice to access female-only spaces free from males, depriving them of privacy, diminishing their safety, and exposing them to shame.

66. Discrimination based on sex under the Equal Protection Clause encompasses policies that disproportionately harm one sex, such as the School District's policy at issue here that compromises the privacy and sense of security of female students in nominally sex-segregated facilities.

67. The policy is not narrowly tailored to a compelling government interest. While accommodating male students' gender identity may be a legitimate interest, the policy fails to balance this interest with the privacy and safety rights of female students, as evidenced by the failure to offer single-use gender-neutral facilities to accommodate the self-declared gender preferences of male students.

68. The policy stigmatizes female students by forcing them to either endure privacy violations or seek burdensome alternatives, branding them as less entitled to safe and equitable facilities. This violates their right to equal protection under the Fourteenth Amendment.

69. Any affirmative defense of the policy based on Defendants' interpretation of the requirements of the Illinois Human Rights Act, 775 ILCS 5/5-101 *et seq.*, is untenable because state law cannot excuse violations of the Equal Protection Clause. In any case, IDHR's non-regulatory guidance, which lacks the force of law, cannot mandate that the School District prioritize self-declared gender preferences over the privacy rights of female students.

70. Defendants have intentionally violated the Equal Protection Clause, entitling F.F. and the class to nominal damages against the School District.

## COUNT II

**Violation of Title IX**
**20 U.S.C. § 1681–1688**
**(Against Defendant School District)**

71. Plaintiffs incorporate paragraphs 1 through 62 as though fully set forth herein.

72. Title IX provides that no person shall, on the basis of sex, be excluded from participation in, denied the benefits of, or subjected to discrimination under any education program receiving federal financial assistance.

73. The School District is a recipient of federal financial assistance and is subject to Title IX.

74. The School District's policy creates a hostile educational environment by subjecting female students to the constant risk of encountering males in supposedly female-only restrooms, locker rooms, and showers, causing pervasive anxiety, humiliation, distress, and disruption of their education, as exemplified by F.F.'s behavior of cautiously planning any visit to a restroom.

75. The policy denies F.F. and similarly situated students the benefits of a safe and equitable educational environment, forcing them to avoid restrooms, miss

instruction, coaching, or practice time to access single-use staff facilities, or endure anxiety and discomfort, which impairs their ability to focus on education.

76. The School District's failure to implement adequate alternatives, such as accessible single-use gender-neutral options, constitutes intentional discrimination under Title IX.

77. Any affirmative defense of the School District's failure to comply with Title IX based on its interpretation of the requirements of the Illinois Human Rights Act, 775 ILCS 5/5-101 *et seq.*, is untenable because state law cannot excuse violations of Title IX. In any case, IDHR's non-regulatory guidance, which lacks the force of law, cannot mandate that the School District prioritize self-declared gender preferences over the privacy rights of female students.

78. The School District has intentionally violated Title IX, entitling F.F. and the class to nominal damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court:

A. Certify this action as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of all female students at the School subjected to the School District's restroom policy.

B. Declare that Defendants' policy of allowing biological male students to use the School's female-only spaces, instead of offering such male students single-use

gender-neutral facilities, violates the Equal Protection Clause of the Fourteenth Amendment and Title IX.

C. Issue a preliminary and permanent injunction enjoining Defendants from enforcing the policy of allowing biological male students to use the School's female-only spaces and instead require Defendants to implement a policy offering accessible single-use gender-neutral facilities that do not impose undue burdens on female students.

D. Award Plaintiffs nominal damages in the amount of $1.00 against the School District for violations of the Equal Protection Clause and Title IX.

E. Award Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws.

F. Grant such other and further relief as the Court deems just and proper.

G. Apply the requested declaratory and injunctive relief to each Defendant, their successors, officers, employees, agents, and all persons acting in concert with them.

Dated: August 1, 2025        Respectfully submitted,

/s/Ajay Gupta
Ajay Gupta
The Law Offices of Ajay Gupta
2849 Bond Circle
Naperville, Illinois 60563
(630) 854-7194
ajguptaemail@gmail.com
N.D. Ill. Bar No. 190101

*Counsel for Plaintiffs*