**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| F.F., *a minor, by and through her next friend and father*, JAMES ELLARD FISHER, *individually and on behalf of all others similarly situated,* )<br>)<br>)<br>) | Case No. 1:25-cv-09112 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. )<br>) | |
| VALLEY VIEW COMMUNITY UNIT SCHOOL DISTRICT 365U, )<br>) | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

James Ellard Fisher ("Mr. Fisher"), on behalf of his minor daughter, F.F. ("Plaintiff"), and all others similarly situated, brings a two-count Complaint against Defendants, Valley View Community Unit School District 365U ("School" or "District"), Dr. Keith Wood, in his official capacity as Superintendent of Schools for the District, and Dr. Jason Pascavage, in his official capacity as Principal of Bolingbrook High School (altogether, "Defendants"), alleging Defendants violated: (1) the Equal Protection Clause of the Fourteenth Amendment and (2) Title IX of the Education Amendments of 1972 by and through the school's policy of allowing a transgender girl access to "female-only" spaces, including restrooms, locker rooms, changing rooms, and showers, without any "objective assessment" of gender dysphoria or "subjective manifestation" of female identity. Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint and Plaintiff's Motion to Proceed Anonymously. For the reasons stated herein, the Court grants Defendants' Motion to Dismiss [45], and denies Plaintiff's Motion to Proceed Anonymously [55].

1

## I.    BACKGROUND

Unless otherwise noted, the following factual allegations are taken from Plaintiffs' Complaint, (Dkt. 1), and are assumed true for purposes of resolving this Motion.  *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

### a.    Factual Background

Plaintiff is an 18-year-old female who was previously enrolled at Bolingbrook High School. On November 4, 2024, at around 10:00 a.m., Plaintiff entered a girls' multi-use restroom labeled "girls' bathroom."  After using and exiting a stall, Plaintiff observed a transgender student,[1] who she was familiar with, dressed in "male-typical clothing…with no visible indication of female identity," standing in close proximity to her stall.  Plaintiff feared that the student could have seen her undergarments or her exposed body through small spaces on either side or under the stall door.  While Plaintiff does not allege any facts indicating the student actually saw or tried to see her exposed body, Plaintiff claims to have been "triggered" and to have experienced "intense feelings of anxiety, discomfort, and shame" from the mere possibility of being exposed.

On November 6, 2024, Plaintiff described the incident to her father, Mr. Fisher.  The following day, Mr. Fisher sent a text message to the School's principal, Dr. Pascavage, to report the incident and raise concerns about Plaintiff's privacy.  Dr. Pascavage responded that the transgender female student

---

[1] As to Plaintiff's assertion that the Court improperly adopted Defendants' representation that the student who entered the bathroom is transgender, as opposed to a "biological male," as Plaintiff describes, *see* (Dkt. 49 at *9), the Court is not required to adopt this unsupported, gender characterization from Plaintiff.  While the Court must accept all well-pleaded allegations as true, the Court need not accept unsupported, conclusory factual allegations. *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020).  Plaintiff's conclusion that the student in question is "obviously male" is, at best, based on broad-sweeping inferences and gender stereotyping, as evidence by the pleading and oral arguments before this Court.  Plaintiff's factual conclusions as to this student's assigned sex at birth and their present gender expression, are, on their face, speculative and unsupported.  As such, out of abundance of caution, the Court will refer to the student in question as "transgender."

had been granted access to the girls' restroom pursuant to an Individual Development Plan, or formal plan outlining the student's gender-identity accommodations. To address Plaintiff's privacy concerns, Dr. Pascavage offered Plaintiff access to single-use staff restrooms.

During an in-person meeting with Mr. Fisher on November 12, 2024, Dr. Pascavage further elaborated that the School followed Illinois Department of Human Rights ("IDHR") guidance, titled "Guidance on Protection of Students in Illinois: A Non- Regulatory Guidance Relating to Protection of Transgender, Nonbinary, and Gender Nonconforming Students.[2]" The 2021 IDHR publication provides guidelines on complying with the Illinois Human Rights Act, 775 ILCS 5/5-101 et seq. ("IHRA"), "in the context of a school setting, with specific focus on how the IHRA protects the rights of transgender, nonbinary, and gender nonconforming individuals." In relevant part, the publication states:

> Use of restrooms, locker rooms and changing rooms may not be restricted based upon a student's physical anatomy or chromosomal sex. A student must be permitted to access restrooms or bathrooms, locker rooms and changing rooms that align with their gender-related identity and *without having to provide documentation or other proof of gender.*

> Under the Act, the discomfort or privacy concerns of other students, teachers, or parents are not valid reasons to deny or limit the full and equal use of facilities based on a student's gender-related identity. Instead, any student, teacher or other individual *seeking more privacy should be accommodated by providing that individual a more private option upon their request, if possible.* The prejudices of others are part of what the [Act] was meant to prevent. [T]here is no right that insulates a student from coming in contact with others who are different.

---

[2] Illinois Department of Human Rights, "Non- Regulatory Guidance Relating to Protection of Transgender, Nonbinary, and Gender Nonconforming Students Under the Illinois Human Rights Act," https://dhr.illinois.gov/content/dam/soi/en/web/dhr/publications/documents/idhr-guidance-relating-toprotection-of-transgender-nonbinary-and-gender-nonconforming-students-eng-web.pdf (last visited July 6, 2026).

*Id.* at 6-7 (emphasis added). During continued communication with Dr. Pascavage throughout November 2024, Mr. Fisher expressed frustration with the School's policy and complained that the School's offer to allow Plaintiff's use of an alternative facility would not sufficiently address the issue.

On December 9, 2024, at a public meeting of the School District's Board of Education, Mr. Fisher raised the issue of transgender students having access to the girls' restrooms, drawing attention to gaps on the sides and below stall doors that render the interior of the stall partially visible from outside. In response to Mr. Fisher's concerns about the stall design, between December 20, 2024, and January 6, 2025, the School installed rubber strips and other opaque material on the toilet stalls in the girls' restrooms.

In January 2025, Plaintiff attempted to use the staff restroom in the School's library. Plaintiff alleges, however, that she was denied access to the staff restroom by the librarian. Discouraged, Plaintiff took deliberate care to use other girls' restrooms in the School as far away as possible from the one where the initial "incident" occurred. Further, Plaintiff used these girls' restrooms only during class hours, which she alleges, led to her losing classroom instruction time, disrupted her routine, heightened her unease, and diminished her sense of safety at the School. She further claims that this fear caused her to skip restroom visits, which Plaintiff states was "especially unsettling" during the days she had her period. Plaintiff does not allege, however, any facts indicating that the transgender girl in question made any efforts to view her through the stall or otherwise invade her privacy. Plaintiff also does not allege that she confirmed or investigated the gender identity of any other girls she encountered in the restroom outside of the transgender girl from the initial "incident."

In response to Plaintiff's distress, on March 20, 2025, Mr. Fisher filed a formal Title IX complaint with the School District's Title IX Coordinator, Sarah DeDonato. The complaint alleged that, due to Plaintiff's encounter with a transgender female student in a girls' restroom, Plaintiff was discriminated against and harassed based on her sex. On June 23, 2025, Dr. Teresa Polson, the School

4

District's Assistant Superintendent for Educational Services, sent Mr. Fisher a final decision letter via certified mail and email, rejecting Plaintiff's Title IX complaint, again citing the IDHR's guidance regarding the rights of transgender, nonbinary, and gender nonconforming individuals in a school setting and further stating that the privacy concerns articulated by Plaintiff were "purely speculative and not based on fact."

### b. Procedural Posture

Dissatisfied with the outcome of her Title IX complaint, Plaintiff filed the present action on August 1, 2025, followed by a motion for a temporary restraining order ("TRO") and Preliminary Injunction ("PI") (Dkt. 12). On August 13, 2025, the Court denied the TRO, (Dkt. 13), stating that "Plaintiff's representations in her motion do not demonstrate that Plaintiff is under threat of such immediate harm necessitating extraordinary relief through issuance of a temporary restraining order. On September 30, 2026, the Court also denied Plaintiff's PI Motion, ruling that (1) Plaintiff's claims were unlikely to succeed on the merits, (2) that Plaintiff did not sufficiently allege irreparable harm, (3) that Plaintiff failed to show that no adequate remedies at law existed, and (4) that the balance of equities and public interest weighed in favor of denying Plaintiff's PI Motion. *See* (Dkt. 27.)

On November 11, 2026, Defendants filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim, which is now fully briefed before this Court. Additionally, since the Court's ruling on Plaintiff's PI Motion, Plaintiff has since turned 18, making her the appropriate litigant as opposed to her father. As such, on June 3, 2026, Plaintiff filed a Motion to Proceed Anonymously, in the "interests in avoiding the embarrassment, stigma, and potential for retaliation." Having taken both Motions under advisement, the Court now addresses each Motion in turn.

## II. MOTION TO DISMISS

### a. Legal Standard

5

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

### b. Discussion

In their Motion, Defendants argue all claims against them are subject to dismissal. Specifically, Defendants argue Plaintiff's equal protection claim fails because the District's policy does not constitute sex-based discrimination as all students are permitted access to facilities that align with their gender identity. (Dkt. 46 at *2.) Defendants also argue that Plaintiff's Title IX claim similarly fails since all students in the District are treated equally. (*Id.*) Further, Defendants asserts Plaintiff's privacy concerns do not amount to any federal claim and that she is requesting relief that is plainly unconstitutional, warranting the Court's dismissal of Plaintiff's complaint in its entirety. (*Id.*)

#### i. Equal Protection Claim

Plaintiff alleges Defendants' policy of allowing "male students" access to the School's female-only spaces based solely on their "self-declared gender preferences," subjects female students to privacy violations and discrimination on the basis of sex, constituting an equal protection violation. *See* (Dkt. 1 at *20.)

The Equal Protection Clause mandates that individuals in similar circumstances be treated equally, *City of Cleburne v. Cleburne Living Ctr.*, 105 S.Ct. 3249, 3254 (1985), and prohibits intentional and arbitrary discrimination. *See Vill. of Willowbrook v. Olech*, 120 S.Ct. 1073, 1075 (2000) (*per curiam*). Typically, state actions are presumed valid and upheld if a suspect classification is rationally related to

a legitimate state interest. *City of Cleburne*, 473 U.S. at 3254. This rational-basis standard, however, does not apply to sex-based classifications. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017). Instead, for a sex-based classification, the state bears the burden of proving an "exceedingly persuasive" justification, must demonstrate that the classification advances important governmental objectives, and that the discriminatory methods are substantially related to achieving those objectives. *United States v. Virginia*, 116 S.Ct. 2264, 2275 (1996).

The Seventh Circuit has found sex-based discrimination where school policies exclude students from the bathroom aligned with their gender-identity. In *Whitaker*, the court found that a school district policy violated equal protection when it required students to use specific restrooms matching their birth certificate. 858 F. 3d 1034. The *Whitaker* court reasoned that transgender students who failed to conform to the sex-based stereotypes associated with their assigned sex at birth were treated differently, without a showing by the school that its transgender discrimination was backed by an exceedingly persuasive justification. 858 F. 3d at 1051-53. Similarly, in *A.C. v. Martinsville.* 75 F.4th 760, 772-73 (7th Cir. 2023), the *Martinsville* court held that the exclusion of a transgender student from their gender-affirming facility, based on their failure to conform with gender-stereotypes, was a violation of the Equal Protection Clause. *See id.* Pertinently, the *Martinsville* court explained, where there was no evidence that any student was exposed to A.C. or vice versa, A.C.'s presence behind the door of a bathroom stall did not threaten other students' privacy interests. *Id.* at 773.

Relying on these authorities, and emphasizing that the School's Policy is gender-neutral rather than exclusionary, Defendants assert that Plaintiff cannot maintain her equal protection claim. The School's Policy is tailored to IDHR's guidance which, in relevant part, states that "[a] student must be permitted to access the restrooms or bathrooms, locker rooms and changing rooms that align with their gender identity." (Dkt. 46 at *7.) Defendants argue, because all students are allowed access to

7

the bathroom that aligns with their gender identity, not just "males," as Plaintiff describes, the bathroom access does not prohibit conduct for one sex that it permits for the other. *See* (*id.*) Such a distinction, Defendants argue, is fatal to Plaintiff's equal protection claim because, unlike *Whitaker* and *Martinsville*, which contemplated policies that exclude transgender students from the areas aligned with their gender identity, the District's allowance is inclusive of all students. *See* (*id.* at *8.) Importantly, Defendants assert, because the District's bathroom access is gender neutral and does not treat any students differently on the basis of their sex or transgender identity, there are no discriminatory classifications that trigger a rational basis analysis, yet alone the heightened scrutiny analysis necessary in *Whitaker* and *Martinsville. See* (*id.*) Ultimately, Defendants conclude, because their policy is gender neutral as to all students, Plaintiff's equal protection claim fails.

In response, Plaintiff concedes that *Whitaker* and *Martinsville* are binding authority, but asserts neither case announced a general rule requiring schools to abandon sex-segregated intimate facilities. (Dkt. 49 at *4-5.) Plaintiff argues, Congress expressly recognized that sex separation in intimate settings is compatible with—and indeed contemplated by—Title IX. *See* 20 U.S.C. § 1686 ("Nothing contained in this chapter shall be construed to prohibit any educational institution receiving funds under this Act from maintaining separate living facilities for the different sexes."). According to Plaintiff, Defendants' Policy improperly withdraws sex-based protections that Title IX affirmatively preserves. (Dkt. 49 at *5-6.) Additionally, Plaintiff asserts that the *Whitaker* and *Martinsville* decisions recognized narrow, fact-specific exceptions where Plaintiffs had a consistent gender identity, a medical diagnosis of gender dysphoria, and legal name and gender-marker changes, which Defendants have not provided. *See* (Dkt. 49 at *6.) Here, by contrast, Plaintiff argues the School's Policy creates sex-based discrimination by allowing any "male" to enter a female-only spaces, without consistent gender identity confirmation or pertinent medical diagnoses, subjecting female students to unwanted opposite sex intrusion in intimate spaces. (*Id.* at *10-11.) Finally, Plaintiff asserts that Defendants' Policy does

8

not meet intermediate scrutiny because Defendants have not proven their policy advances an important governmental objective or that the discriminatory methods are substantially related to achieving those objectives where less intrusive alternatives—such as single-user or private facilities—were available. *See* (Dkt. 49 at *11-12.)

Looking at all the facts alleged by Plaintiff, the Court concludes there is no plausible showing of discrimination on the basis of sex; as such, Plaintiff's cannot maintain her sex-based equal protection claim. Sex-based discrimination turns on whether conduct is permitted for one sex that is denied for the other. *U.S. v. Skrmetti*, 145 S. Ct. 1816 (2025). Plaintiff cannot claim that a policy that treats the sexes identically, discriminates on the basis of sex. As alleged in her Complaint, the District follows the IDHR's guidance on bathroom access, which confirms "[a] student must be permitted to access the restrooms or bathrooms, locker rooms and changing rooms that align with their gender identity." (Dkt. 1 at *14.) Thus, on its face, the School's Policy allows all students, regardless of their sex, access to the bathroom that aligned with their gender-identity. All students, Plaintiff included, are allowed access to the restroom that aligns with their gender identity, not just transgender girls; any other interpretation would ignore the fact that transgender boys, cisgender boys, cisgender girls, and gender nonconforming students are all guaranteed the same accommodations as transgender girls. Plaintiff fails to overcome the clear implication that all sexes are treated equally under the policy, and are given the exact same bathroom access.

Importantly, the Supreme Court recently cautioned courts from finding sex-based discrimination in the absence of unequal treatment, as Plaintiff requests. In *U.S. v. Skrmetti,* the Supreme Court found that a law prohibiting certain medical treatments for transgender minors was not subject to heightened scrutiny because the application of the statute relied on age and a medical procedure, rather than sex, and did not prohibit conduct for one sex that it permitted for the other. 145 S. Ct. 1816, 1820; 1831 (2025). Here, Defendants' Policy, similarly, does not prohibit conduct for

9

one sex that it permits for the other, since *ALL* students are permitted to use the restroom that aligns with their gender identity. Taking all of Plaintiff's well-pled facts as true, there is no discrimination on the basis of sex.

Finally, despite failing to allege any discrimination based on sex, Plaintiff still asks this Court to enter an order that resembles the policies already found to be unconstitutional in *Whitaker* and *Martinsville* by requiring Defendants to adopt a policy based on "objective criteria" like medical documentation and gender identity that would explicitly result in unlawful medical disclosures and disparate treatment of transgender students. Any policy requiring medical documentation of gender identity would run afoul to the rulings in *Whitaker* and *Martinsville* and would be contrary to the IDHR's guidance, which states that all students *MUST* be permitted access to facilities that align with their gender-related identity "without having to provide documentation or other proof of gender." *supra* n. 2 at 3. Plaintiff's request is denied, as it runs afoul to federal and state law.

Ultimately, because Defendant's policy is gender neutral as to all students, the Court dismisses Plaintiff's equal protection claim and her requests for injunctive relief related to that claim.

### ii. Title IX Claim

The Court now addresses Plaintiff's Title IX Claim. Plaintiff alleges that the District creates a hostile educational environment by subjecting female students to the constant risk of encountering "males" in supposedly female-only restrooms, locker rooms, and showers, causing pervasive anxiety, humiliation, distress, and disruption of their education. (Dkt. 1 at *22). Plaintiff further alleges that requiring her to potentially miss instruction time to access private restrooms impaired her ability to focus on her education. *Id.*

Title IX protects individuals from sex-based discrimination and provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance [...]" 20

10

U.S.C. § 1681(a). A hostile-environment claim under Title IX requires allegations that conduct is severe, pervasive, and objectively offensive such that it denies equal educational access. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

Defendants assert that Plaintiff fails to state a cognizable Title IX claim because she is not facing any differential treatment on the basis of her sex. (Dkt. 46 at *8.) Similar to their equal protection argument, Defendants explain Plaintiff – like every other student – is allowed access to the restroom that aligns with her gender identity. (Dkt. 46 at *9) Defendants note, any stress and anxiety Plaintiff may feel is based on the fear of who she may run into in the bathroom, not on any actual restriction or discrimination. (*Id.*) Instead, Plaintiff asks this Court to enter an order that disparately treats all transgender students based on Plaintiff's singular, speculative conclusion that the student she encountered in the bathroom hypothetically could have looked through the space between the stall doors. (*Id.*) Defendants further explain, Plaintiff's Title IX theory appears unfocused on her own access to restrooms – which is identical to that of every other student – and more concerned with who she might see while in a restroom; however, theories based on such privacy concerns have already been denied by the Seventh Circuit as explained in *Martinsville.* 75 F.4th at 773-774 (bathroom policy relying on biological sex to address "privacy concerns" for cisgender students, violates Title IX because a transgender students' presence in their gender affirming bathroom "did not threaten those privacy interests.").

Plaintiff, in response, maintains that she plausibly alleges sex discrimination and a hostile environment under Title IX. Plaintiff asserts the School's Policy denies female students the benefits of the sex-segregated protections Title IX regulations expressly contemplate, "axiomatically" creating sex-based discrimination. (Dkt. 49 at *12) Plaintiff explains that she does not invoke privacy as a free-standing theory of liability, but as the injury that gives context to her claims: her allegation that Defendants' policy dismantled protections in a way that uniquely burdened one sex with the invasion

11

of bodily privacy. (*Id.* at \*13) Plaintiff finally argues, the relief she requests, requiring transgender students to use separate facilities, is lawful, modest, and consistent with "longstanding educational practice," with the added benefit of taking the full cost of accommodations off "female students." (*Id.* at \*14.)

Again, Plaintiffs failure to identify any sex-based discrimination, dooms her claim. Plaintiff has not shown that Defendants' policy violates Title IX since its policy guarantees all students equal rights provided under the statute. Despite not making this showing, Plaintiff actually seeks to subject the District to further Title IX liability, by asking the Court to order a policy that relies on sex-based stereotypes—primarily the way a student "behaves, walks, talks, or dresses"—which is definitively unlawful in the Seventh Circuit. *See Whitaker.*, 858 F.3d at 1048. That Plaintiff asks the Court to improperly rely on sex stereotypes is evidenced by Plaintiff's insistent assertion that the student in question should be prohibited from using the girls' bathrooms for failing to "exhibit" any "outward appearance or other indication of presenting as female," as well as by her counsel's oral argument suggesting the transgender student's "male clothing" and "baggy clothes" "obviously" meant she could not identify as female—despite baggy clothes being a common style worn by teenagers across all genders.

Additionally, Plaintiff's argument that Title IX actually ***mandates*** sex-segregated spaces is wholly unsupported. Plaintiff argues that the recognition of sex-segregated spaces in both federal statutes and interpreting cases vests affirmative statutory requirements to provide Plaintiff with the relief she requests. *See* (Dkt. 49 at \*11.) Plaintiff fails to acknowledge, however, the discretionary language contained in Title IX, which explicitly states "[n]othing contained in this chapter shall be construed to prohibit any educational institution receiving funds under this Act from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686. The Department of Education's implementing regulations further state that school's "***may*** provide separate toilet, locker room, and

12

shower facilities on the basis of sex" so long as they are comparable. 34 C.F.R. § 106.33 (emphasis added).

The statute clearly provides schools with the option to maintain sex-separate facilities, but by no means requires schools to do so. Plaintiff seeks to recharacterize plainly discretionary language to mandate that Defendants exclude transgender students from the restroom matching their gender identity, despite no such mandate. In fact, the Seventh Circuit, if anything, has repeatedly protected school's decision to allow gender-affirming bathroom access, pursuant to IDHR guidelines, and emphasized the discretion with which schools are able to do so. The *Martinsville* court, for example, left the door open to the "reasonable measures taken by the school districts to ensure that a student genuinely needs the requested accommodations," but ultimately left that determination to the discretion of the school itself, further emphasizing that such accommodations are lawful. *See* 75 F.4th 760 at 773. Contrary to Plaintiff's assertion, the clear, unambiguous language of these authorities shows that sex-segregated facilities are allowable, not required. Whether a school chooses to offer sex-segregated facilities is within the school's discretion, so long as the facilities are comparable across genders. A violation would only occur if the facilities that were offered were not comparable, which Plaintiff does not allege. *See* 34 C.F.R. § 106.33.

Finally, Plaintiff asks the Court to determine what effect, if any, the Supreme Court's June 30, 2026, decision in *Virginia v. B. P. J.*, 609 U.S. ___ (2026) (No. 24-43), has on its present ruling. In *B. P. J.*, the Supreme Court determined states may maintain separate women's and men's sport teams based on "biological sex." *See id.* (slip op. at 19). Plaintiff argues, *B. P. J.*'s determination that "sex" in Title IX be understood to mean only "biological sex" bears directly on the merits of her claims since Defendants "fail[] to segregate the sexes at all" "with female students bearing the entire burden of this failure." *See* (Dkt. 59 at *2). The Court's decision is not impacted by *B.P.J.*, however, because the Supreme Court explicitly limited its decision to the sports context. *See* (slip op. at 14) ("the only

question here is whether schools may limit women's and girls' sports to biological females."). Furthermore, even if the decision in *B. P. J* were applicable in this context, which it is not, it only holds that states ***may*** maintain separate sports teams based on biological gender, it does not hold that states are ***required*** to do so. Finally, any clarification outlined in *B. P. J* still does not resolve Plaintiff's threshold failure to allege that she or any other student was treated differently or provided a lesser facility based on sex, biological or otherwise, because Defendants' Policy is applicable to all genders and not exclusionary of any.

As such, because Plaintiff fails to allege any threshold sex-based discrimination, her sex-discrimination and hostile educational environment claim under Title IX, cannot survive. The Court thus grant's Defendants' Motion to Dismiss Plaintiff's Title IX claim.

### III.  MOTION TO PROCEED ANONYMOUSLY

Having resolved Defendants' Motion to Dismiss, the Court now turns to Plaintiff's Motion to Proceed Anonymously in any possible future filings.

The "the use of fictitious names is disfavored," and courts have "an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Roe v. Dettelbach*, 59 F.4th 255, 259–60 (7th Cir. 2023) (internal quotation marks and citation omitted). The Seventh Circuit has "limited anonymity to cases in which there is a danger of retaliation, and when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Id.* at 259 (citation modified). "Only exceptional circumstances justify the use of a fictitious name for an adult party." *E.A. v. Gardner*, 929 F.3d 922, 926 (7th Cir. 2019). Such circumstances require "[a] substantial risk of harm—either physical harm or retaliation by third parties, beyond the reaction legitimately attached to the truth of events as determined in court." *Doe v. Trs. of Ind. Univ.*, 101 F.4th 485, 491 (7th Cir. 2024).

14

Plaintiff asserts, "[d]epending on the nature and circumstances of the case, minors who reach adulthood during the course of litigation may be able to justify such treatment as a result of their continuing interests in avoiding the embarrassment, stigma, and potential for retaliation that can attend public disclosure." *Ricketts v. Titusville Area Sch. Dist.*, 150 F.4th 634, 636 (3d Cir. 2025). Plaintiff argues, because her claims involve highly sensitive and personal matters and due to the significant risk of harassment, retaliation, and stigma, Plaintiff should be granted relief to continue to proceed under her initials. (Dkt. 55 at *3.) Plaintiff further argues public revelation of her identity would expose her to a substantial risk of harassment, intimidation, and retaliation from members of the public who hold strong opposing views on issues of gender identity in schools. (Dkt. 55 at *4.)

After reviewing Plaintiff's filing and after hearing the parties' oral arguments on June 16, 2026, the Court denies Plaintiff's motion to continue proceeding under initials. The circumstances of this case do not overcome the presumption in favor of open proceedings. First, Plaintiff's asserted concern about reputational harm is a nonstarter. Proceeding anonymously merely to avoid embarrassment or reputational damage is an insufficient basis for pseudonymous litigation. *See Trs. of Ind. Univ.*, 101 F.4th at 491–92. Second, Plaintiff's generalized complaints of possible "harassment" and "ostracism" do not rise to the level of a substantial risk of physical harm or retaliation sufficient to warrant a pseudonym. Perplexingly, Plaintiff's own authority, which is neither binding nor persuasive on this Court, dealt with an action arising out of teacher's alleged sexual assault of student, the circumstances of which could not be farther from the facts of the present case. *See Ricketts*, 150 F.4th 634. Because Plaintiff's case does not include such "exceptional circumstances" as to allow her to proceed under initials, the Court will not grant such relief.

As such, Plaintiff shall disclose her true legal name in the caption and all subsequent filings, consistent with Federal Rule of Civil Procedure 10(a).

**CONCLUSION**

15

For the reasons stated herein, the Court grants Defendants" Motion to Dismiss [45] and

Denies Plaintiffs' Motion to Proceed Anonymously [55].


IT IS SO ORDERED.

Date: 7/13/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

16